UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DEBORAH L. BURTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. ) | 4:08-cv-216-SEB-WGH |

**ENTRY**

Deborah L. Burton seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, et seq. For the reasons explained in this Entry, the Commissioner's decision must be REMANDED for an explanation of the evidentiary basis for the credibility assessments of Plaintiff.

*Background*

Burton filed her application for DIB on July 13, 2005, alleging an onset of disability of April 1, 2005. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on June 13, 2008. Burton appeared, accompanied by her attorney Steven K. Robison. Medical and other evidence were introduced into evidence. Burton

and a medical expert testified at the hearing, as did a vocational expert.  The ALJ issued a decision denying benefits on August 6, 2008.  On November 12, 2008, the Appeals Council denied Burton's request for review, making the ALJ's decision final.  See Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed.  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

     The ALJ's decision included the following findings: (1) Burton met the insured status requirements of the Act through December 31, 2009; (2) Burton had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date; (3) Burton had "severe" impairments consisting of disorders of the lumbar spine (discogenic and degenerative) and carpal tunnel syndrome; (4) Burton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Burton had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), provided that she lift no more than ten pounds; stand/walk no more than two hours in an eight-hour workday; sit no more than six hours in an eight-hour workday; stoop, balance, crouch, crawl, kneel, and climb stairs or ramps no more than occasionally; not climb ladders, scaffold, or ropes; not walk on wet surfaces; not work around hazards such as unprotected

heights or unguarded dangerous moving machinery; not work in areas of temperature extremes or excessive humidity; avoid vibration in the workplace; and limit herself to frequent bilateral handling and fingering; and (6) Burton was capable of performing her past relevant work as a receptionist with the limitations provided by Burton's residual functional capacity. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Burton had not been under a disability as defined in the Act from April 1, 2005, through the date of the ALJ's decision.

## *Discussion*

### I. Applicable Law

To be eligible for DIB, a claimant must prove that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

Id. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. Id. at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)).

**II. Analysis**

In this case, the ALJ determined that Burton had severe impairments consisting of discogenic and degenerative disorders of the lumbar spine as well as carpal tunnel

syndrome, but that she could perform her past relevant work as a receptionist with certain limitations. Burton argues that the ALJ's decision is not supported by substantial evidence. Specifically, Burton contends that the ALJ's residual functional capacity assessment was flawed because the ALJ failed to grant the opinions of Burton's treating physicians controlling weight and because he ignored evidence favorable to Burton's claim. Burton further argues that the ALJ failed to assess her credibility in compliance with Social Security Ruling ("SSR") 96-7p.

Burton first contends that the ALJ did not give proper weight to the opinion of treating physician, Dr. Kavelman, with respect to her carpal tunnel syndrome.[1] She contends that the ALJ should have given controlling weight to Dr. Kavelman's opinion because Dr. Kavelman had treated Burton since 2005 and the record lacked substantial evidence contradicting Dr. Kavelman's opinion.

In February 2007, Dr. Kavelman completed a physical RFC assessment diagnosing Burton with severe bilateral carpal tunnel syndrome. (R. at 331.) Dr. Kavelman opined that Burton could use her hands and fingers for five percent of an eight-hour workday and her arms for twenty-five percent of an eight-hour workday. (R. at 334). The ALJ discussed the medical evidence relating to Burton's carpal tunnel syndrome. He noted

---

[1] Burton also argues generally that the ALJ should have granted controlling weight to the opinions of her other treating physicians, Dr. Baker, Dr. Schooler, and Dr. Whitworth. Burton fails to identify, however, what opinions should have been granted controlling weight. Furthermore, none of these physicians provided an opinion as to how Burton's impairments affect her ability to work, which is the issue on appeal. Therefore, the Court's examination of whether the ALJ granted proper weight to the opinions of treating physicians will be limited to Dr. Kavelman's opinions with regard to Burton's carpal tunnel syndrome.

that a July 9, 2008, report showed electrophysiological evidence of bilateral median neuropathies at the wrists, but that the report also stated that there was no history of physical evidence for radiculopathy. (R. at 21.) Because Burton complained of discomfort, a needle exam was deferred. (Id.) The ALJ acknowledged that opinions from treating physicians are generally granted controlling weight, but found that Dr. Kavelman's limitations on handling, fingering, and reaching were "out of proportion with the clinical evidence." (Id.)

Instead, the ALJ relied on the opinion of Dr. Hutson, the medical expert at the hearing whom the ALJ noted was also an orthopedic specialist. (Id.) Dr. Hutson testified at the hearing that the EMG showing electrophysiological evidence of bilateral carpal tunnel syndrome was accurate, but that the record lacked any clinical findings for carpal tunnel syndrome. (Id.) Despite the lack of clinical findings, however, the ALJ provided some limitations on handling and fingering based on the EMG results. (Id.)

Burton argues that the ALJ failed to state what evidence was out of proportion with Dr. Kavelman's findings. This, however, is not the case. The ALJ directly referred to Dr. Hutson's opinion that the record lacked any clinical findings for carpal tunnel syndrome. (Id.) At the hearing, Dr. Hutson testified that he reviewed Dr. Kavelman's records and found "absolutely no findings in there whatsoever of any clinical evidence of carpal tunnel syndrome." (R. at 361.) Dr. Hutson explained that when clinical evidence of carpal tunnel syndrome is present, the patient experiences weakness of the thenar muscles and is unable to touch the thumb to the little finger. (Id.) He further noted that

6

the patient may lose feeling in the thumb, index finger, and one-half of the ring finger. (Id.)  There was no evidence of these symptoms in the record. (Id.)  He further noted that there was no evidence of a "positive tenals [sic] test" or a wrist flexion test. (Id.)  Dr. Hutson explained that when neurologists conduct EMG and nerve conduction studies, they always recommend clinical correlation to verify their findings, but the record lacked such findings. (Id.)  While the ALJ did not review Dr. Hutson's testimony in the depth provided in this opinion, his discussion of the evidence with reference to Dr. Hutson's testimony was adequate and the Court is able to trace the path of the ALJ's reasoning in this regard.  "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.  Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985).  The ALJ's determination that Dr. Kavelman's limitations on handling, fingering, and reaching were out of proportion with the clinical evidence is supported by substantial evidence.

The Seventh Circuit has held that if well-supported evidence is introduced that contradicts the opinion of a treating physician, even if it is that of non-treating, non-examining physicians, then the treating physician evidence is not automatically controlling and is just one more piece of evidence to consider.  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  In Hofslien, the court recognized that while a treating physician has the advantage over non-examining physicians due to having spent time with the claimant,

> the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits.

Id. (internal citations omitted); see also Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007). In addition, a treating physician's statement that a claimant is disabled or cannot work is not conclusive. See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir.2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' "). The reason given by the ALJ in evaluating the opinion of Dr. Kavelman is a valid basis on which to weigh medical source opinions. See 20 C.F.R. § 404.1527(e); Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d). Under these circumstances, the weight the ALJ gave to the opinion of treating physician Dr. Kavelman was not legally erroneous.

Burton further argues that the ALJ ignored evidence that supported her claim of disability with regard to her carpal tunnel syndrome. In particular, Burton argues that the ALJ ignored Dr. Baker's finding that there was electrophysiological evidence for severe bilateral median neuropathies at the wrists, (R. at 339), and treatment notes from Dr. Whitworth noting Dr. Baker's findings and documenting numbness and tingling in both hands (R. at 326-27).[2] Burton contends that as a result of failing to consider this

---

[2] Burton also cites to treatment notes from Dr. Kavelman documenting arthritis and sciatica. (Pl's. Br. at 12, citing R. at 278.) Burton fails to identify how this evidence relates to her carpal tunnel syndrome, and it is unclear from the record how the two are related. Thus, the ALJ's failure to discuss this evidence was proper.

evidence, the ALJ limited Burton only to frequent handling and fingering "even though Burton's testimony, the objective medical evidence, and the evidence from her treating physician all indicate that she has severe limitations with handling and fingering." (Pl's. Br. at 12.) While Burton does not refer to any specific testimony in her brief, she testified at the hearing that she has a strong grip, (R. at 350), but that she has a tendency to drop small items such as pens or cigarettes. (R. at 354). She also testified that she wears braces on her wrists as needed, most often at night after driving. (R. at 350.)

      The ALJ is not required to provide a written evaluation of every piece of testimony and evidence submitted. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). All that is required is that the ALJ "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Id. (quoting Stephens, 766 F.2d at 298). "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." Id. That is not the case here. The ALJ recognized Burton's symptoms and found that her carpal tunnel syndrome constituted a severe impairment. (R. at 19, 21.) He discussed Dr. Baker's EMG findings, and those findings provided the basis for the limitations on handling and fingering provided by the ALJ. (R. at 21.) Moreover, the evidence omitted by the ALJ does not contradict his finding that Burton was limited only to frequent bilateral handling and fingering, and none of the evidence cited by Burton establishes that she has greater limitations that those provided by the ALJ. (See R. at 325-26.)

The ALJ did not ignore the evidence concerning Burton's carpal tunnel syndrome. Although another fact-finder could weigh this evidence and come to a different ultimate conclusion, the Court must decline any invitation to reweigh the evidence because the court "cannot engage in [its] own analysis of whether [a claimant] is severely impaired as defined by the SSA regulations." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004); see also Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004) ("[W]e will not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.") (internal quotation omitted); Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ accommodated Burton's carpal tunnel syndrome in his RFC assessment by limiting Burton to frequent bilateral handling and fingering. (R. at 20-21.) The ALJ's discussion of the evidence relating to Burton's carpal tunnel syndrome was adequate, and the Court is able to trace the path of the ALJ's reasoning. The ALJ's conclusions with respect to Burton's carpal tunnel syndrome are supported by substantial evidence.

Burton also contends that the ALJ "failed entirely" to discuss the evidence from Dr. Whitworth, Dr. Schooler, or Dr. Baker. (Pl's. Br. at 14.) Burton does not identify what evidence the ALJ failed to discuss, and the ALJ's decision does not support this argument. In his decision, the ALJ referred to a May 5, 2005, operative note from Dr. Schooler indicating that Burton "underwent a L5 laminectomy with L5, S1 diskectomy

due to a severe right L5, S1 radiculopathy secondary to right L5." (Op. 5;[3] R. at 164.) The ALJ next referred to a report from Dr. Schooler showing that Burton received good results from the May 2005 diskectomy, but that Burton's back pain had increased due to a hematoma above the fascia for which drainage was advised. (Op. 5; R. at 157.) A September 27, 2005, progress report from Dr. Schooler noted that Burton was "healing well" and that she had undergone "significant improvement." (R at. 21, 99.) Dr. Schooler recommended that Burton stop smoking and perform her daily exercises and advised that Burton could use an exercise bicycle and walking stick if she desired. (Id.) The ALJ also referred to treatment notes from Dr. Whitworth that showed that Burton had no additional pain issues and that medications provided Burton with 70% relief from her lower back pain. (R. at 21, 257.) Dr. Whitworth's reports from April, June, and August 2007 indicated that Burton continued to have relief from 70% her pain and that she was able to perform up to 70% of her daily activities. (Id.) In an October 25, 2007, pain management report, Dr. Whitworth documented that Burton admitted that her pain decreased with medication and that the medication enabled her to do things during the day, but that she suffered from memory problems when she took her medication. (R. at 21, 326.) Furthermore, the ALJ cited to Dr. Baker's report that there was electrophysiological evidence of bilateral median neuropathies at the wrists. (R. at 21, 339.)

---

[3] Page five of the ALJ's decision is missing from the record. A complete copy of the ALJ's decision was attached to the Complaint for Disability Benefits. (Compl. Ex. B.)

Burton also argues that the ALJ erred by failing to discuss the report submitted by Burton's mother that served to corroborate Burton's accounts of disabling pain. In support of this argument, Burton cites to SSR 96-7p, which Burton contends "does not permit ignoring of evidence from lay witnesses describing a claimant's limitations and problems." (Pl's. Br. at 14.) It is not clear on what basis Burton has drawn this conclusion, and Burton does not cite to any support for this conclusion. Nonetheless, the ALJ's failure to address explicitly the report submitted by Burton's mother was not error. See Carlson, 999 F.2d at 181 (explaining that testimony by claimant's wife that served to corroborate claimant's own testimony was not "separate line of evidence" that ALJ was required to discuss because the testimony "was essentially redundant"); see also Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996). Here, the ALJ discussed Burton's allegations that her pain rendered her unable to work. (Op. 5.) Because the report from Burton's mother served only to corroborate Burton's own testimony, (R. at 73-83), it did not constitute a "separate line of evidence" that the ALJ was required to discuss.

Next, Burton argues generally that the ALJ ignored her depression and neuropathy in assessing her residual functional capacity,[4] which, in turn, caused the hypothetical

---

[4] In her brief, Burton argues that the ALJ "completely ignored Burton's depression and neuropathy in his residual functional capacity even though Dr. Kavelman indicated that her depression not only affects her physical condition but significantly interferes with her ability to deal with work stress." ( Pl's. Br. at 13.) This characterization of Dr. Kavelman's statements is inaccurate. While Dr. Kavelman indicated that Burton's depression affected her physical condition, he noted that this only occurred "at times." (R. at 332.) It is also true that Dr. Kavelman indicated that Burton was severely limited in her ability to deal with work stress, but Dr. Kavelman did not indicate that this was related to her depression. Even if Burton's characterization of Dr. Kavelman's opinion were accurate, her argument fails nonetheless for the
(continued...)

questions posed to the vocational expert to be incomplete. At step three of the analysis, the ALJ found that Burton's mental impairment was a non-severe impairment. (R. at 20.) In making this finding, the ALJ noted that Burton had experienced no episodes of decompensation and that she suffered only mild difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (Id.) He found that the lack of any psychotherapy and Burton's own admission that her symptoms were controlled by medication bolstered his conclusion that Burton's mental impairment was a non-severe impairment. (Id.) At step four of the analysis, the ALJ discussed an August 18, 2005, mental status exam in which Dr. Karkut diagnosed Burton with affective disorder with mixed anxiety and depressed mood. (R. at 21, 137-40.) Dr. Karkut reported that Burton was fully oriented; her abstract reasoning appeared intact; her memory was not diminished; and she was able to adequately identify the similarities and differences between various objects. (Id.) Finally, her GAF (Global Assessment of Functioning) was a 60.[5] (Id.) Based on this report, the ALJ concluded that Burton's mental impairment did not warrant any functional limitations. (Id.)

---

(...continued)
reasons discussed in this opinion.

[5] On the GAF, a clinician rates an individual's ability to function on a scale of 1 (the lowest functioning) to 100 (superior functioning). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Fourth Edition Text Revision 2000). An individual with a GAF score between 41 and 50 has "serious symptoms . . .or any serious impairment in social, occupational, or school functioning." Id. A GAF score of 51 to 60 indicates only "moderate difficulty in functioning." Id.

It is clear from the ALJ's decision that he did not ignore Burton's depression in assessing her residual functional capacity, but instead examined it as required and found that it did not warrant any functional limitations. Because the ALJ found that the record did not support any additional limitations for Burton's mental impairments, he was not obligated to include any such limitations in a hypothetical question posed to the vocational expert. See, e.g., Herron v. Shalala, 19 F.3d 329 (7th Cir. 1994) ("The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record."). Accordingly, this determination is supported by substantial evidence.

With regard to Burton's neuropathy, Burton does not explain how her neuropathy would have affected the ALJ's residual functional capacity assessment, nor does she cite to any specific evidence in the record to support her contention that her neuropathy would have affected her ability to work. Given this lack of specificity and the ALJ's reference to the EMG showing evidence of bilateral median neuropathies at the wrists, it is not entirely clear that the ALJ did not, in fact, provide limitations for Burton's neuropathy. (R. at 21.) Without more, the Court cannot conclude that the ALJ's failure to provide limitations for Burton's neuropathy or to include such limitations in a hypothetical question posed to the vocational expert was error.

Lastly, Burton contends that substantial evidence does not support the ALJ's credibility determination. She argues that the ALJ failed to properly evaluate her

credibility in compliance with SSR 96-7p and that the ALJ relied solely on her minimal daily activities in assessing her credibility.

In assessing Burton's functional capacity, the ALJ found Burton's subjective allegations of incapacity and limitations to be only partially credible. (Id.) He noted Burton's allegations that she was unable to work due to radiating back pain; that the pain prevented her from doing any lifting, standing, or sitting for more than five minutes; and that her constant pain left her unable to drive. (Op. 5.) The ALJ concluded that while Burton's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity assessment. (Id.) In finding that Burton was only partially credible, the ALJ noted that Burton was able to perform "a significant number of her daily activities," including hanging, folding, and putting away the laundry as well as doing the household cooking. (R. at 21.) He noted that Burton continued to do her therapy exercises and that she read as a hobby. (Id.) The ALJ did, however, find that Burton was consistent with her allegations of sleep difficulties and her inability to garden as she had in the past because of the bending associated with the task. (Id.)

Although the ALJ's credibility determination is entitled to deference, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight." SSR 96-7p; see also Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003) (pursuant to SSR 96-7p, ALJ must "articulate the reasons behind credibility evaluations"). While the ALJ recited the appropriate regulations prior to assessing Burton's credibility, (R. at 20, citing SSR 96-7p, SSR 96-4p, and 20 C.F.R. § 1529), the ALJ did not discuss the various criteria contained in those regulations. It appears that the only factor relied on by the ALJ was Burton's daily activities. This was error. More troubling even is the ALJ's failure to provide any specific reasons for his finding that Burton was only partially credible. The ALJ merely listed evidence without analyzing how that evidence related to Burton's credibility. Because the ALJ failed to explain the weight given to Burton's statements, the Court cannot affirm the ALJ's credibility analysis.

The Commissioner argues that the ALJ's credibility determination was not based solely on Burton's daily activities, but was also based on evidence that tended to show continued improvement and successful pain management. This contention is unavailing. First, it is not clear that the ALJ's recitation of this evidence is connected to his credibility determination given that it precedes the ALJ's statement "[a]s far as the claimant's credibility . . . ." (R. at 21.) Second, while it is true that the ALJ summarized medical evidence that tended to show improvement, he did not supply any reasoning in his opinion as to how that medical evidence related to Burton's credibility. "[T]he ALJ must *specify* the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony." Golembiewski v.

16

Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). The Commissioner arrived at the conclusion that Burton was not credible because objective medical evidence showed that she had improved, not the ALJ. The Commissioner's *post hoc* characterization is not helpful under the circumstances. Id. ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

On remand, the ALJ shall articulate his assessment as to what extent Burton's allegations of her symptoms are credible and shall support that determination with evidence of record. The ALJ shall articulate how he determined Burton's credibility based on the various factors listed in SSR 96-7p and 20 C.F.R. §§ 404.1529, 416.929. The ALJ shall also keep in mind that reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. The Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home," and ignoring *how* a claimant carried out such activities. Craft v. Astrue, 539 F.3d 668, 680 (7th Cir. 2008) (internal quotation omitted); see also Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir.2000).

*Conclusion*

For the reasons discussed in this Entry, the ALJ's conclusion regarding Burton's credibility is not supported by substantial evidence, and the Court is required to REMAND the case to the ALJ for further consideration. Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S. Ct. 2157, 115 L.Ed.2d 78 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

IT IS SO ORDERED.

Date: 03/12/2010

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Steven K. Robison
MONTGOMERY ELSNER & PARDIECK
srobison@meplegal.com

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana